IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD J. LARKIN, III | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | NO. 05-2558 |
| Defendant | | |

**REPORT AND RECOMMENDATION**

CAROL SANDRA MOORE WELLS                                   May 31, 2006
UNITED STATES MAGISTRATE JUDGE

Edward J. Larkin, III ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). The parties have filed cross-motions for summary judgment. For the reasons set forth below, it is recommended that the Commissioner's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment be DENIED.

**I. PROCEDURAL HISTORY**[1]

On June 4, 1997, Plaintiff applied for DIB alleging disability, since June 28, 1996, as a result of degenerative disc disease of the lumbar spine, carpal tunnel syndrome,[2] obsessive compulsive disorder,[3] depressive disorder, and anxiety. (R. 21-27, 91-99). Plaintiff last met the insured status

---

[1] I have reviewed and considered the following documents in analyzing this case: Plaintiff's Complaint and Motion for Summary Judgment, Plaintiff's Brief in Support, Plaintiff's Reply Brief to Defendant's Motion for Summary Judgment, Defendant's Motion for Summary Judgment, and the Court transcript ("R."), including all exhibits thereto.

[2] Carpal tunnel syndrome is a "compression of the median nerve at the wrist, which may result in numbness, tingling, weakness, or muscle atrophy in the hand and fingers." *See MedlinePlus* available at http://www.nlm.nih.gov/ medlineplus/ency/article/000433.htm#Definition.

[3] Obsessive Compulsive Disorder is "an anxiety disorder characterized by obsessions or compulsions. Having one or both is sufficient for the diagnosis. An obsession is a recurrent and intrusive thought, feeling, idea, or sensation. A compulsion is a conscious, recurrent pattern of behavior a person feels driven to perform." *See MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/ency/article/000929.htm#Definition.

requirements on December 31, 2002. (R. 104). Benefits were denied, initially, whereupon, Plaintiff requested and was granted an administrative hearing. Although, on October 8, 1998, Plaintiff appeared before Paula Garrety, Administrative Law Judge ("ALJ"), the case was remanded to the state agency for review of Plaintiff's mental condition. The case was denied on remand and Plaintiff was granted a second administrative hearing. On September 24, 1999, Plaintiff testified before ALJ Garrety; a vocational expert ("VE") also testified. On December 10, 1999, the ALJ, using the sequential evaluation process,[4] issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Upon judicial review in this court, the Honorable Diane M. Welsh remanded the matter for further proceedings, consistent with her Report and Recommendation ("R&R").

On June 24, 2004 a supplemental administrative hearing was held before ALJ Garrety; VE Denis Mohn testified. (R. 28-53). In a decision dated August 16, 2004, the ALJ concluded that

---

[4] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not a claimant is disabled:

> 1. If claimant is working, doing substantial activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 CFR §§ 404.1520(b); 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 CFR §§ 404.1520(c); 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 CFR, a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 CFR §§ 404.1520(d); 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 CFR §§ 404.1520(e); 416.920(e).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 CFR §§ 404.1520(f); 416.920(f).

Plaintiff, notwithstanding inability to return to his past relevant work retained the residual functional capacity ("RFC")[5] to perform a significant range of light and sedentary work, and, thus, was not "disabled," as defined by the Act. (R. 27 Finding Nos. 10-12). The Appeals Council declined Plaintiff's request for review on April 4, 2005, (R. 3-5), rendering the ALJ's unfavorable decision the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's determination. This case was referred to the undersigned by the Honorable Thomas J. O'Neill, Jr., under the authority of 28 U.S.C. § 636(b)(1)(B), for preparation of a report and recommendation.

## II. FACTUAL BACKGROUND

A. Personal History

Plaintiff, born on July 10, 1955, was forty-seven years old when his insured status expired. (R. 55). He has a tenth grade education and past relevant work experience as an assembler. (R. 93, 98, 104). Plaintiff is married and currently lives in a house with his wife and one adult son. (R. 43, 122). Plaintiff injured his back at work in June of 1996. (R. 92, 167).

B. Plaintiff's Testimony and Statements

At the administrative hearing, Plaintiff testified that he settled his workers' compensation claim for approximately $80,000 in June of 1996;[6] he receives $43 monthly in work-related disability retirement benefits. (R. 43-44). He stated he sleeps up to twelve hours a day, but sometimes goes days without sleep due to depression and boredom. (R. 34, 40, 45). He often talks to himself, hears voices in his head, and believes that there are "a bunch of different people inside" of him. (R. 34-35, 40). Plaintiff complained of difficulty concentrating, remembering things and anxiety that causes

---

[5] "Your RFC is what you can still do despite your limitations." 20 CFR §§ 404.1520(a); 416.945(a).

[6] Plaintiff testified that he received a settlement for his workers' compensation claim approximately one year after he was injured, which he believed was in June of 1995. (R. 43). However, the record reflects that Plaintiff injured his back in June of 1996 (R. 92, 167) and so it is likely that the settlement occurred in June of 1997.

him to grit down on his teeth and suffer from neck pain and headaches. (R. 37-38, 42). He stated that his obsessive compulsive symptoms have worsened since 1999, causing him to wash his hands often, repeatedly turn things on and off, and count numbers in his head. (R. 38-39). Plaintiff, who stated he does of all of the driving in his household, just received a speeding ticket prior to the hearing. (R. 43, 45). He reportedly rode his bicycle to store recently, but does not ride it as often as he did prior to his mental condition. (R. 47).

C. Medical History

Plaintiff was treated, in June 1996, at Holmesburg Family Medical for depression, anxiety, and obsessive-compulsive disorder. (R. 156, 163, 255-58). He remained out of work for six and a half months and was worried about his employment, medical, and financial situations; his primary care physician prescribed zoloft.[7] (R. 156, 160-63, 258).

Plaintiff presented to Parkview Hospital, in November 1998, and was hospitalized for three days for dysphoria and suicidal ideation; a GAF[8] of 40[9] was assessed upon admission. (R. 146). Barton Branscum, M.D., the discharging psychiatrist, noted that anafranil[10] had resolved Plaintiff's suicidal ideation and his dysphoria had lifted. *Id*. Dr. Branscum discharged Plaintiff with a diagnosis of depressive disorder, not otherwise indicated, obsessive-compulsive disorder and a

---

[7] Zoloft is "used to treat depression, obsessive-compulsive disorder (bothersome thoughts that won't go away and the need to perform certain actions over and over), panic attacks (sudden, unexpected attacks of extreme fear and worry about these attacks), posttraumatic stress disorder (disturbing psychological symptoms that develop after a frightening experience), and social anxiety disorder (extreme fear of interacting with others or performing in front of others that interferes with normal life)." *See MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a697048.html#why

[8] GAF is "a clinician's judgment of the individual's overall level of functioning [and] [t]his information is useful in planning treatment and measuring its impact, and in predicting outcome." *See Diagnostic and Statistical Manual of Mental Disorders* ("*DSMMD*") (4th ed. 1994) at 32. This is a scale from 1-100 with 90-100 being the rating for a "superior functioning" person and 1-10 reflecting a serious danger of harming one self or others or persistent hygiene neglect. *Id.* at 34.

[9] A GAF score of 31-40 indicates a major impairment in several areas such, such as school, family relations, and judgment. *See* DSMMD at 32.

[10] Anafranil is "used to relieve mental depression." *See MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202055.html.

GAF of 65.[11]

On December 17, 1998, Dr. Theodore Wilf, M.D., Plaintiff's psychiatrist at Warminster Hospital, noted in a psychiatric evaluation that Plaintiff did not appear depressed, seemed extroverted, and had a spontaneous affect. (R. 251). Dr. Wilf's diagnosis was dysthymic disorder,[12] obsessive-compulsive disorder, herniated disk, carpal tunnel syndrome, Osgood-Schlatter disease,[13] gastroesophageal reflux, financial problems, chronic back pain, and a GAF of 55.[14] (R. 252). Dr. Wilf continued Plaintiff on anafranil and recommended Plaintiff continue counseling and follow-up in one month. (R. 253).

On August 5, 1999, Virginia Kean, M.A., a psychologist, reported Plaintiff's outpatient treatment at Warminster Hospital. (R. 154). She noted that, despite therapy, Plaintiff's anxiety remained consistently high, his obsessive-compulsive disorder remained persistent, and his medication decreased Plaintiff's concentration and increased his fatigue. *Id*. Ms. Kean found that Plaintiff could not engage in any gainful employment on a sustained and continuous basis; his prognosis remained poor. *Id*.

On August 5, 1999 Dr. Wilf opined that Plaintiff's dysthymic disorder, severe depression, with decreased energy, decreased concentration, hypersomina, obsessive-compulsive disorder prevented him from functioning in a normal work situation. (R. 155).

---

[11] A GAF score of 65 is the rating for "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." *See* DSMMD at 32.

[12] Dysthymic disorder is "a chronic form of depression, characterized by moods that are consistently low, but not as extreme as other types of depression." *See MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/ency/article/000918.htm.

[13] Osgood-Schlatter disease is "a painful swelling of the bump on the front of the upper tibia in an area called the anterior tibial tubercle." *See MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/ency/article/001258.htm#Definition.

[14] A GAF score of 50-61 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any other serious impairment in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *See* DSMMD at 32.

D. State Agency Assessments

A. Mental Evaluations

On March 10, 2004, Paul Perch, E.D.D., a state agency psychologist, reviewed Plaintiff's medical records and completed a Psychiatric Review Technique form on behalf of the state agency. (R. 335-49). Perch determined that Plaintiff did not have a severe mental impairment prior to December 2002, Plaintiff's date last insured. (R. 335). Perch diagnosed dysthymic disorder and obsessive-compulsive disorder with mild limitations on Plaintiff's activities of daily living and ability to maintain social functioning, concentration, persistence or pace. (R. 338, 345). Perch reported no episodes of decompensation of an extended duration. (R. 345).

In a mental evaluation dated May 27, 2004, Drs. Kranson and Nemeth diagnosed Plaintiff with bipolar disorder that could be expected to last at least a year; Plaintiff's prognosis was guarded such that he could not work productively. (R. 358-59). Drs. Kranson and Nemeth found moderate restrictions of activities of daily living, extreme difficulties in maintaining social functions, constant deficiencies of concentration, persistence or pace, and continual episodes of deterioration or decompensation in work or work-like settings. (R. 364). Dr. Herman concurred with this diagnosis and prognosis. (R. 370). Also he noted that Plaintiff's psychiatric condition exacerbated his high blood pressure, diabetes and high cholesterol and that Plaintiff's medications increased his anxiety. (R. 371).

B. Residual Functional Capacity Assessment

On March 12, 2004, a state agency disability adjudicator found Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk, with normal breaks, for a total of six hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, and push

6

and/or pull without limitation. (R. 351). No postural, manipulative, visual, communicative, or environmental limitations were found. (R. 352-54).

C. Vocational Testimony

At the administrative hearing, the ALJ elicited testimony from VE Denis Mohn to determine if jobs exist in the national and local economies that a person of Plaintiff's age, education, and physical and mental limitations could perform. (R. 49-52). The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age and education, who could perform work that is:

> . . . simple and routine, not requiring sequence in task. The work should be confined to one-to two-step tasks. The work should be low-stress in nature. As a result of the individual's anxiety, the work should not require more concentration than is required for one-to two-step tasks because of complaints of fatigue and depression. The work should not expose the individual to heights or hazardous machinery because of complaints of fatigue and drowsiness. The work should be confined to work that does not require lifting in excess of 20 pounds, standing in excess of two hours, walking in excess of two hours, or sitting in excess of four hours. The work should not require continuous repetitive right-hand motion, and should provide no more than limited contact with the public and coworkers. In other words, light, low stress, no heights or hazardous machinery, simple routine tasks, limited contact with others, and no continuous repetitive right-hand motion.

(R. 50-51). The VE concluded that Plaintiff could perform a limited range of light[15] and sedentary[16] work as a garment sorter and folder (3,000 positions regionally; 180,000 positions nationally), ticketer (400 positions regionally; 170,000 positions nationally), and general table worker (5,000 positions regionally; 635,000 positions nationally). *Id*. If Plaintiff's subjective testimony were deemed credible, the VE opined that he could not work on a sustained basis. (R. 51).

---

[15]"Light work involves lifting no more that 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b); 416.967(b).
[16]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a); 416.967(a).

## III. ALJ's FINDINGS

After the hearing, the ALJ issued the following findings:

1. [Plaintiff] met the disability insured status requirements of the Social Security Act on June 28, 1996, the alleged onset date of disability, and has acquired sufficient quarters of coverage to remain insured through December 31, 2002.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

3. From June 28, 1996 through December 31, 2002, [Plaintiff] was suffering from the following medically determinable impairments which limited his ability to work: bipolar disorder and degenerative disc disease involving the thoracic spine. [Plaintiff's] mood disorder was mildly interfering with his activities of daily living, and mildly to moderately interfering with his social functioning and his ability to maintain concentration, persistence and pace. There is no evidence of a residual disease process which would likely cause the [Plaintiff] to decompensate in response to minimal increases in the mental demands of work or to minor changes in the workplace; there is nothing to suggest that [Plaintiff] would be unable to function without a highly supportive living arrangement, and there are no repeated episodes of decompensation. [Plaintiff's] carpal tunnel syndrome is non-severe.

4. [Plaintiff's] impairments did not meet or equal any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4 at any time relevant to this decision.

5. At all times relevant to this decision, [Plaintiff's] fatigue, depressed mood, and impaired concentration restricted him to simple "one/two step" job tasks; his reported levels of anxiety restricted him to low stress work; his problems with anger management restricted him to jobs where he would have only limited contact with coworkers and the general public; and his reported fatigue and drowsiness would restrict him to jobs which would not expose him to heights or hazardous machinery. His physical impairments restricted him to jobs which do not require lifting or carrying more than 20 pounds

       on an occasional basis; the ability to tolerate standing or walking for more than 2 hours in an eight hour workday; and the ability to sit for more than 4 hours over the course of a normal workday. In addition, he would be unable to work at jobs which require repetitive use of the right hand secondary to carpal tunnel syndrome.

6. [Plaintiff's] allegations of wholly disabling functional limitations are not supported by the evidentiary record.

7. At all times relevant to this decision, [Plaintiff] lacked the residual functional capacity to return to his past relevant work.

8. [Plaintiff] was born on July 10, 1955.

9. [Plaintiff] attended school through the tenth grade.

10. Based on the [Plaintiff's] age, education, and work history, and assuming a residual functional capacity for the full range of light work, the medical and vocational guidelines set forth in Table No. 2, Appendix 2, Subpart P of Regulations No. 4 would direct a finding that [Plaintiff] was not disabled at any relevant time on or prior to December 31, 2002.

11. Although the [Plaintiff] is unable to perform the full range of light work, using the above-cited rules as a framework for decision-making, and taking into consideration all of the available evidence, there were a significant number of light and sedentary jobs throughout the national economy which the [Plaintiff] was capable of performing on a regular and continuing from June 28, 1996 through December 31, 2002.

       Examples of such jobs include: garment sorter/folder (approximately 3,000 jobs in the local economy, and approximately 180,000 jobs in the national economy); ticketer (approximately 400 jobs in the local economy, and approximately 170,000 jobs in the national economy); and table worker (approximately 5,000 jobs in the local economy, and approximately 635,000 jobs in the national economy).

12. [Plaintiff] was not under a disability as defined in the Social Security Act at any time through the date of this decision. (R. 26-27).

## IV.  DISCUSSION

A. <u>Standard of Judicial Review</u>

The role of this Court upon judicial review is to determine if substantial evidence in the administrative record supports the Commissioner's final decision. *See Stunkard v. Sec'y of Health and Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*citations omitted*). It is more that a mere scintilla of evidence but may be less than a preponderance. *See Stunkard*, 841 F.2d at 59. It is the responsibility of the ALJ to resolve conflicts in evidence, determine credibility of witnesses and weigh the evidence presented. *See Richardson*, 402 U.S. at 401. This Court's review is not *de novo*, and the evidence of record will not be weighed a second time. *See Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).

B. <u>Burden of Proof in Disability Proceedings</u>

In order to be found "disabled" under the Act, a Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. §§ 404.1505(a); 416.905(a). Plaintiff may establish a disability through: (a) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, App. 1; or (b) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S.

458, 460 (1983); 42 U.S.C. § 423 (d)(2)(A).

Under the first method, a Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. Under the second method, a Plaintiff must initially demonstrate that a medically determinable disability prevents her from returning to past employment. *See Brown v. Bowen*, 845 F.2d 1211, 1214 (3d Cir. 1988). If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given his or her age, education, and work experience. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). This is a two-fold analysis. First, the Commissioner must evaluate the Plaintiff's job qualifications such as physical ability, age, education, and work experience. *See* 42 U.S.C. § 423 (d)(2)(A); 20 C.F.R. §§ 404.1520(f); 416.920(f). Second, the Commissioner must consider, given Plaintiff's qualifications, whether jobs exist in the national economy that a similarly situated person could perform. *See* 20 C.F.R. §§ 404.1520(f), 404.1566-69; 416.920(f), 416.966-69.

C. Review of the Administrative Law Judge's Decision

The ALJ, applying the sequential evaluation process,[17] concluded that Plaintiff could adjust to work which exists in significant numbers in the national economy. Plaintiff seeks reversal of the ALJ's decision to deny disability benefits. Specifically, Plaintiff asserts that the ALJ failed to pose a proper hypothetical to the VE; the ALJ's decision is not supported by substantial evidence; and the ALJ failed to consult a medical expert to help determine if Plaintiff met listings 12.04 and 12.06. Plaintiff's Brief ("Pl. Br.") at 6. The Commissioner requests that this court affirm its finding that the Plaintiff was not disabled. If the ALJ's decision that Plaintiff was not disabled at any time

---

[17]*Supra* n. 4, at 2.

11

through the day of his decision is supported by substantial evidence in the record, it should be affirmed. *See* 42 U.S.C. § 405 (g). Thus, the issue presented is whether substantial evidence supports the Commissioner's determination that Plaintiff is not disabled because he is able to perform limited light work.

   1. The ALJ's Hypothetical to the VE was Proper

Plaintiff argues the ALJ presented a flawed hypothetical to the VE by failing to present any of his problems caused by bipolar disorder to the VE. *See* Pl. Br. at 8-12. In order to serve as substantial evidence that Plaintiff can perform work that is available in the national economy, the VE must respond to a hypothetical question that encompasses *all* of Plaintiff's limitations that are supported by the objective medical evidence of record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

The Commissioner is required to conduct an assessment of an "individual's ability in evaluating claims of stress and mental illness." *See Walls v. Barnhart*, No. CIV. A. 01-2361, 2002 WL 485641, *19 (E.D. Pa. 2002). SSR 85-15, 1985 WL 56857 at *6 states,

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job, for example, a busboy need only clear dishes from tables. But an individual with a severe mental disorder may find unmanageable the demand of making sure that he removes all of the dishes, does not drop them, and gets the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may be not able to work even in the absence of close supervision; the *knowledge* that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerated for some mentally impaired persons."

SSR 85-15 provides the following example:

> A person whose vocational factors of age, education, and work experience would ordinarily be considered favorable . . . would have severely limited occupational base if he or she has a mental impairment which causes a substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations. A finding of disability would be appropriate.

*Id.* at *4. The ALJ, however, did mention all of Plaintiff's credible mental limitations in her hypothetical to the VE:

> . . . assume . . . an individual of this [Plaintiff's] age, education, and past work history. Further assume the individual is capable of performing work that is simple and routine, not requiring sequence in task. The work should be confined to one-to two-step tasks. The work should be *low-stress in nature. As a result of the individual's anxiety, the work should not require more concentration than is required for one-to two-step tasks because of complaints of fatigue and depression. The work should not expose the individual to heights or hazardous machinery because of complaints of fatigue and drowsiness.* The work should be confined to work that does not require lifting in excess of 20 pounds, standing in excess of two hours, walking in excess of two hours, or sitting in excess of four hours. The work should not require continuous repetitive right-hand motion, and should provide no more than limited contact with the public and coworkers. In other words, light, low stress, no heights or hazardous machinery, simple routine tasks, limited contact with others, and no continuous repetitive right-hand motion.

(R. 49-50) (*emphasis added*). Plaintiff's fatigue and drowsiness associated with his "other depression-related limitations" were addressed by the ALJ in this hypothetical as requited by Judge Welsh. *See* Judge Welsh's R&R at 11. However, the ALJ found that Plaintiff's testimony regarding his limitations were not fully credible.[18] The ALJ presented an accurate hypothetical that presented all of Plaintiff's credible limitations.

  2. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony, ignored the

---

[18]*See* discussion *infra* at 14-16.

opinions of Drs. Herman, Kranson, Nemeth, and Kear; and relied too heavily on Plaintiff's activities of daily living in discounting subjective complaints. *See* Pl. Br. at 13-16. This court finds that the ALJ's decision is supported by substantial evidence.

      a. The ALJ properly assessed Plaintiff's credibility and activities of daily living

Plaintiff contends that the ALJ improperly evaluated and dismissed his corroborated testimony. *See* Pl. Br. at 13-14. In this Circuit, the ALJ's credibility findings "must be accepted unless they are without basis in the record." *Kliesh v. Chater*, No. CIV. A. 95-213, 1996 WL 39438 (E.D. Pa. Jan. 31, 1996) (citing *Gober v. Mathews*, 574 F.2d 772, 777 (3d Cir. 1978); *Torres v. Harris*, 494 F.Supp. 297, 301 (E.D. Pa. July 29, 1980), aff'd, 659 F.2d 1071 (3d Cir. 1981)). Other district courts, similarly, hold that an ALJ's credibility assessment will not be overturned unless it is "patently wrong." *Peterson v. Massanari*, No. 99 C 6026, 2001 WL 831818 (N.D.Ill. July 24, 2001) (citing *Zurawski v. Halter*, 245 F.3d 881 (7thCir. 2001)). Ordinarily, a reviewing court defers to the ALJ's credibility determination, because he or she has had the opportunity during a hearing to assess the witnesses' demeanor. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). However, the ALJ must indicate what evidence he is rejecting and provide valid reasons for discounting that evidence. *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)).

Furthermore, to be found credible, subjective complaints of pain must bear some relationship to the Plaintiff's physical status, as determined by objective medical findings, diagnoses and opinions. *See Baerga v. Richardson*, 500 F. 2d 309 (3d Cir. 1974), cert denied, 420 U.S. 931 (1975); 20 C.F.R. § 404.1529. An ALJ may discredit a Plaintiff's complaints of pain when: (1) there is contrary evidence in the record, and (2) the ALJ explains the basis for rejecting the complaints. *See*

*Mason v. Shalala*, 994 F. 2d at 1067. If medical signs or laboratory findings show that a Plaintiff has a medically determinable impairment that could produce pain, the ALJ must consider all available evidence, including Plaintiff's statements, to determine whether and how the symptoms limit Plaintiff's capacity to work. *See* 20 C.F.R. § 404.1529 (c)(1). Specifically:

> [I]t is not sufficient for the adjudicator to make a single, conclusory statement that the "individual's allegations have be considered" or that "the allegations are not credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 97-7p at 2.

The Commissioner's rulings further instruct the ALJ to consider (1) the individual's daily activities; (2) the location, duration, frequency and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate pain; (4) the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitation and restrictions dues to pain or other symptoms. SSR 96-7p at 8.

In the case at bar, the ALJ's written decision offers specific reasons for discrediting Plaintiff's testimony and gives an adequate basis for a reviewing court to ascertain the propriety of the weight assigned Plaintiff's statements. The ALJ specifically found:

> In reaching this assessment of the [Plaintiff's] functional capacity, the

15

> Administrative Law Judge notes the absence of objective medical evidence to support functional limitations as extreme as those the [Plaintiff] describes in his testimony. [Plaintiff's] allegations of disabling functional limitations are also inconsistent with his activities of daily living which suggest a much broader range of functioning. With regard to the latter, the record shows that [Plaintiff] lives with his wife and son and that he is the only one in the household who drives a motor vehicle. He testified that he travels to the Jersey shore a couple times over the summer months and that he drives his wife and son to wherever they need to go when they are not using public transportation. He also enjoys riding his bicycle. At the instant hearing, he did not volunteer any complaints of feeling tired or fatigued and, when specifically questioned, he did attribute any of these symptoms to his impairments or his medication. Rather, the [Plaintiff] testified that he takes naps during the day because he is bored.

(R. 24-25) (footnote omitted). These reasons are consistent with the record.

Plaintiff further argues that the ALJ took his testimony regarding his activities of daily living out of context. Pl. Br. at 16. Upon this court's review of the record, the ALJ properly assessed Plaintiff's activities of daily living. The ALJ's decision thoroughly discusses inconsistencies in Plaintiff's testimony and statements to his treating physicians contained in medical the record. The ALJ articulated reasons for the rejection of Plaintiff's subjective complaints, therefore, this assessment should be upheld. *See Fargnoli*, 247 F.3d at 43 (3d Cir. 2001)(citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d at 121.)

  b. The ALJ properly assessed the opinions of Drs. Herman, Kranson, Nemeth and Kear

Plaintiff next argues that the ALJ ignored the medical opinions of Drs. Herman, Kranson, Nemeth and Kear. *See* Pl. Br. at 15. The Commissioner counters that the opinions of Drs. Kranson, Nemeth, and Herman do not relate to the relevant period, inasmuch as these opinions were authored and pertain to his mental status after the Plaintiff's date last insured. Defendant's Brief ("Def. Br.") at 13. The Commissioner further contends that the ALJ's omission of Dr. Kear's findings in her

decision was harmless error; Judge Welsh found the ALJ's prior decision explicitly discussed Dr. Kear's opinion. *Id*. at 15-16. This court finds the ALJ properly assessed all expert opinions.

The mental evaluation of Drs. Nemeth and Kranson on May 27, 2004 was completed more than a year after Plaintiff's date last insured and did not purport to relate back to Plaintiff's prior condition. The relevant time period was from June 1996 through December 2002. ALJ Garrety therefore, appropriately discredited the opinions of Drs. Herman and Kranson. The ALJ was

> . . . not persuaded by the Medical Source Statements obtained from Drs. Herman and Kranson. While [Plaintiff's] mental disorder may have progressively worsened after September 2003, there is nothing in the record to suggest the presence of such extreme functional limitations at any time on or before December 31, 2002, the date the [Plaintiff] last met the disability insured status requirements of the Social Security Act. The Administrative Law Judge will give [Plaintiff] benefit of the doubt, however, and find that at all times relevant to this decision [Plaintiff's] mood disorder was moderately interfering with both his social functioning and his ability to maintain concentration, persistence and pace.

(R. 24). The ALJ elected medical reliance upon the assessment of Dr. Perch, a state agency psychological consultant, who found that:

> from June 28, 1996 through December 31, 2002, the [Plaintiff] did not have any mental impairment which would interfere in any significant way with his ability to work. (Exhibit B-6F). The Administrative Law Judge is according significant weight to this opinion which is consistent with the minimal evidence of record and the lack of any treatment for a mental health care problem from the latter part of 1999 through September 20, 2003, the date the [Plaintiff] presented to the SRI Psychological Services.

(*Id*.) The ALJ committed harmless error in failing to discuss the opinion of Dr. Kear in her August 16, 2004 decision. As Judge Welsh previously noted:

> [F]irst, Dr. Kear is not a treating physician. Instead, he performed a consultative psychological evaluation of the [P]laintiff. (Tr. 303). Further, in her [d]ecision, the ALJ explicitly mentioned findings

> made by Dr. Kear. (Tr. 22, 23, 24). Thus, it is not the case that the ALJ disregarded Dr. Kear's findings. Instead, she explicitly considered them.

Judge Welsh's R&R at 8. The ALJ's prior decision fully discussed Dr. Kear's opinion and ALJ Garrety incorporated *all* of Plaintiff's limitations in her August 16, 2004 decision. Morever, as noted by the Commissioner, "the current residual functional capacity assessment and hypothetical question address all the relevant limitations from Dr. Kear's report, making the alleged error harmless." Def. Br. at 16.

### 3. The ALJ was not Required to Obtain Medical Expert Testimony

Finally, Plaintiff complains that the ALJ should have engaged a medical expert to testify at the administrative hearing. Pl. Br. at 17-18. SSR 96-6p, issued by the Commissioner to provide guidance when applying the rules in 20 CFR §§ 404.1527(f) and 416.927(f), explains that the rules for weighing medical and other opinions of treating sources apply in considering the medical opinions of non-examining sources. SSR 96-6p requires that the Commissioner obtain an updated medical expert opinion regarding equivalence in two circumstances:

> 1. When no additional medical evidence is received, but *in the opinion of the administrative law judge or the Appeals Council* the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> 2. When additional medical evidence is received that *in the opinion of the administrative law judge or the Appeals Council* may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

*Id. (emphasis added)*. First, in accordance to the language of this ruling, the ALJ has discretion in obtaining an updated medical opinion. Likewise, 20 C.F.R. § 404.1527(f), does not *require* that the Commissioner or the ALJ obtain an updated medical opinion. Rather, the rule is permissive, the

ALJ, "*may* also ask for and consider opinions from medical experts on the nature and severity of [an] impairment(s) and on whether [an] impairment(s) equals the requirements of any [listed] impairment." 20 C.F.R. § 404.1527(f)(2)(iii) *(emphasis added)*. Moreover, the record neither suggests medical equivalence nor presents additional evidence that would likely influence the outcome of the Commissioner's determination based on the December 31, 2002 cutoff date.

Plaintiff, citing no legal authority for his assertion that the ALJ was *required* to obtain medical expert testimony, improperly relies on Judge Welsh's ruling in her R&R in which the Judge found that "[t]he ALJ is not a doctor nor a psychologist and she lacks the expertise to determine for herself *whether [a] particular medication will or will not cause drowsiness, tiredness or fatigue*." Judge Welsh's R&R at 9 (*emphasis added*). The court's R&R did not reference SSR 96-6p or the necessity for medical expert testimony in the instant case, to the contrary the court discussed the need for the ALJ to properly consider the limitations caused by the negative side-effects of Plaintiff's medication(s). Notably, the ultimate assessment of "disability" is a legal determination which rests not with any physician, but, rather, with the ALJ who must be fully informed to make the proper determination. *See Santiago v. Apfel*, 1999 WL 179756 at *2 (E.D.Pa. Mar. 23, 1999) (citing *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984)). In accordance with SSR 96-6p, the ALJ was not required to obtain the opinion of a medical expert at the administrative hearing. The evaluation of Dr. Perch adequately supports the ALJ's determination.

## V.  CONCLUSION

After a thorough review of the record, this court finds that ALJ's decision is supported by substantial evidence. Accordingly, I make the following:

## RECOMMENDATION

AND NOW, this 31st day of May, 2006, it is respectfully recommended that:

1.  The Report and Recommendation be APPROVED and ADOPTED;

2.  The Plaintiff's Motion for Summary Judgment be DENIED;

3.  The Commissioner's Motion for Summary Judgment be GRANTED; and

4.  Judgment be ENTERED in favor of DEFENDANT, Commissioner of the Social Security Administration, and against PLAINTIFF, Edward J. Larkin, III.

It be so ORDERED.


                                         */s/ Carol Sandra Moore Wells*
                                         CAROL SANDRA MOORE WELLS
                                         United States Magistrate Judge